# Court of Appeals
# of the State of Georgia

ATLANTA,   July 12, 2016

*The Court of Appeals hereby passes the following order:*

**A16A0395.  IN THE INTEREST OF J. F., a child.**

The question in the attached opinion is hereby certified to the Supreme Court of Georgia pursuant to Georgia Constitution Art. VI, § V, ¶ IV and Georgia Constitution Art. VI, § VI, ¶ III (7).



*Court of Appeals of the State of Georgia*
   *Clerk's Office, Atlanta,*   07/12/2016
   *I certify that the above is a true extract from the minutes of the Court of Appeals of Georgia.*
   *Witness my signature and the seal of said court hereto affixed the day and year last above written.*

_____ *, Clerk.*

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**July 12, 2016**

# In the Court of Appeals of Georgia

A16A0395. IN THE INTEREST OF J. F., a child.

DILLARD, Judge.

This Court is faced with a unique dilemma. On the one hand, the Georgia Constitution dictates that we decide each case within two terms of being docketed. On the other hand, that same Constitution also requires us to respect our place in this state's judicial hierarchy and steadfastly avoid encroaching upon the Supreme Court of Georgia's exclusive jurisdiction or domain. But in order to decide the case before us, we must choose between two conflicting precedents that are currently being reviewed by our Supreme Court as part of its certiorari process. And while our constitutional duty to decide cases within two terms of docketing may well authorize us to make this choice, we think that it is inadvisable to do so. Instead, we choose to exercise our authority under Article VI, Section V, Paragraph IV of the Georgia

Constitution and certify the question presented in this case to our Supreme Court "for instruction," to which we "shall then be bound." We do not take this action lightly. And in doing so, we fully recognize that this Court is treading into murky jurisprudential waters. But faced with the choice of carving out a narrow (and perhaps temporary) exception to this state's certification jurisprudence or disrupting our Supreme Court's certiorari process, we choose the former.

Before fleshing out our reasoning for certifying the question presented in this case to our Supreme Court, we will briefly describe the procedural context of the case, as well as the parties' respective arguments. Specifically, J. F. appeals from the juvenile court's denial of his motion to dismiss the State's case against him with prejudice for failure to comply with OCGA § 15-11-521 (b). He argues that because the State failed to file a delinquency petition within 30 days after his release from detention and neglected to seek an extension of time to file same, the trial court was required to dismiss the State's case with prejudice.

The undisputed facts show that J. F. was detained on January 30, 2015, and charged with robbery by sudden snatching and aggravated assault. The juvenile court released him from custody following a February 2, 2015 detention hearing. But then,

on March 16, 2015, J. F. moved to dismiss the case with prejudice due to the State's failure to file a delinquency petition.

On March 17, 2015, acknowledging that no delinquency petition had been filed within 30 days of J. F.'s release from custody as required by OCGA § 15-11-521 (b), the State simultaneously administratively dismissed the complaint and filed a new complaint identical to the one it had just dismissed. Then, the State filed a delinquency petition within 30 days of the new complaint.

At a March 25, 2015 hearing on J. F.'s motion to dismiss, the assistant district attorney explained that no delinquency petition had been timely filed within 30 days of J. F.'s release because, in the course of implementing a new organizational system within her office, J. F.'s case had been overlooked. The assistant district attorney further informed the court that (1) her office's procedure was to administratively dismiss and then re-file complaints when the original time limit was missed , and (2) a motion for an extension of time had not been filed because she thought such a motion "would just be a waste of the court's time." Ultimately, the trial court denied J. F.'s motion to dismiss with prejudice, and this interlocutory appeal follows.

As always, our analysis necessarily begins with the text of the relevant statute, *i.e.*, OCGA § 15-11-521 (b), which provides that

[i]f a child is not in detention prior to adjudication, a petition alleging delinquency shall be filed within 30 days of the filing of the complaint alleging violation of a criminal law or within 30 days of such child's release pursuant to a determination that detention is not warranted. Upon a showing of good cause and notice to all parties, the court may grant an extension of time for filing a petition alleging delinquency. The court shall issue a written order reciting the facts justifying any extension.

This Court recently addressed this Code section in two procedurally similar cases, which were issued just three days apart: *In the Interest of M. D. H.*,[1] decided on November 10, 2015, and *In the Interest of D. V. H.*,[2] decided on November 13, 2015. However, on March 7, 2016, the Supreme Court of Georgia issued an order granting petitions for a writ of certiorari *in both cases*.[3] In doing so, our Supreme Court indicated that it was "particularly concerned" with whether this Court "correctly applied OCGA § 15-11-521 (b)."[4]

---

[1] 334 Ga. App. 394 (779 SE2d 433) (2015).

[2] 335 Ga. App. 299 (779 SE2d 122) (2015).

[3] *See* Order Granting Writ of Certiorari, Case Nos. S16G0428, S16G0546 (Ga. March 7, 2016).

[4] *Id.*

4

Again faced with the issue we addressed in *M. D. H.* and *D. V. H.*, we recognize—as we did on motion for reconsideration in *D. V. H.*[5]—that there is tension between the analyses employed in those cases. Indeed, the particular facts of this case, as well as our Supreme Court's decision to grant certiorari in *M. D. H.* and *D. V. H.*, make this tension even more palpable. This tension, of course, should and must be resolved. And our Supreme Court has strongly signaled its intent to do just that with its *consolidated* grant of certiorari as to both of those cases. Nevertheless, some members of this Court propose that *we* should take the opportunity afforded by this case to revisit, clarify, and resolve the tension between *M. D. H.* and *D. V. H.* by overruling *M. D. H.* We think this course of action is inadvisable. To overrule—or even substantially revise or clarify—one of these cases would disrupt the status quo of the very precedents now pending before our Supreme Court and encroach upon that court's constitutional authority to review this Court's decisions.[6] This brings us

---

[5] *See* 335 Ga. App. at ___ (on motion for reconsideration).

[6] *See* GA. CONST. Art. VI, § VI, ¶ V ("The Supreme Court may review by certiorari cases in the Court of Appeals which are of gravity or great public importance."); *see also* GA. CONST. Art. VI, § VI, ¶ VI ("The decisions of the Supreme Court shall bind all other courts as precedents.").

5

back to the question of whether certifying this case to the Supreme Court of Georgia is appropriate.

As previously noted, we are only faced with this unique dilemma because of Georgia's constitutionally mandated two-term rule.[7] Unlike federal courts, we are not at liberty to delay the disposition of appeals in anticipation of pending decisions from the Supreme Court of the United States or our own Supreme Court.[8] We have concluded, then, that the only meaningful course of action is for this Court to certify the question presented in this case to our Supreme Court for its consideration along with *M. D. H.* and *D. V. H.*, as is permitted by the Constitution of the State of Georgia.[9]

---

[7] *See* GA. CONST. Art. VI, § IX, ¶ II ("The Supreme Court and the Court of Appeals shall dispose of every case at the term for which it is entered on the court's docket for hearing or at the next term.").

[8] *See In re Singh*, 276 Ga. 288, 289 n.3 (576 SE2d 899) (2003) (noting that "the 'remedy' for an appellate court's failure to timely dispose of a case to which the two-term rule is applicable is the affirmance of the lower court's judgment by operation of law"); *see generally* GA. CONST. Art. VI, § V, ¶ III ("The Court of Appeals shall be a court of review and shall exercise appellate and certiorari jurisdiction in all cases not reserved to the Supreme Court or conferred on other courts of law. The decisions of the Court of Appeals insofar as not in conflict with those of the Supreme Court shall bind all courts except the Supreme Court as precedents.").

[9] *See* GA. CONST. Art. VI, § V, ¶ IV ("The Court of Appeals may certify a question to the Supreme Court for instruction, to which it shall then be bound."); GA.

In taking this course of action, we are mindful that our Supreme Court has previously held that "[a] certified question of law and fact will not be answered and, even if the question certified is one of law only, it will not be answered if such answer would necessarily control the decision of the case."[10] Although the answer to the

CONST. Art. VI, § VI, ¶ III (7) ("Unless otherwise provided by law, the Supreme Court shall have appellate jurisdiction of the following classes of cases: . . . All cases certified to it by the Court of Appeals[.]"); *see also* OCGA § 15-2-8 (2) (noting that the Supreme Court has the authority to "hear and determine all cases, civil and criminal, that may come before it; to grant judgments of affirmance or reversal, or any other order, direction, or decree required therein; and, if necessary, to make a final disposition of a case in the manner prescribed elsewhere in this Code"); OCGA § 15-2-8 (7) (noting that the Supreme Court has the authority to "exercise such other powers, not contrary to the Constitution of this state, as given to it by law," and that "[t]his paragraph shall not be interpreted to abrogate the inherent power of the court"); SUPREME COURT OF GEORGIA RULE 47 ("The Court certifying to this Court a question of law shall formulate the question and cause the question to be certified and transmitted to this Court, together with copies of such parts of the record and briefs in the case as the certifying Court deems relevant.").

[10] *See Kelly v. Ga. Cas. & Sur. Co.*, 216 Ga. 834, 834 (120 SE2d 329) (1961); *see also Womack v. U.S. Fid. & Gaur. Co.*, 208 Ga. 717, 717 (69 SE2d 188) (1952) ("For this court to answer all questions necessary to a decision is for us to decide the case which is, by the Constitution, made the duty of the Court of Appeals."); *S. Exchange Bank v. First Nat'l Bank*, 165 Ga. 289, 289 (140 SE 753) (1927) ("[U]nder repeated rulings of this court, where a certified question of law does not propound a distinct issue of law, but in effect calls for a decision of the whole case, this court need not answer it." (punctuation omitted)). *But see Houston v. Lowes of Savannah, Inc.*, 235 Ga. 201, 203 (219 SE2d 115) (1975) (answering question of law in first certified question from a majority of the Court of Appeals, but declining to answer second certified question, which "call[ed] for a determination and application of facts disposing of the entire case and should not be answered by this court in response to

7

question presented in this appeal would undoubtedly control the decision in this case, we have found no published opinion addressing whether this well-established principle applies in cases in which this Court's decision to answer such a question would necessarily disrupt our Supreme Court's certiorari process.[11] Nevertheless, out of respect for the "sacrosanct role" the Supreme Court of Georgia plays "in establishing and maintaining a coherent and consistent body of authoritative decisional law,"[12] the degree of consideration given by our Supreme Court before

a certified question"); *Penn. Mut. Life Ins. v. Blount*, 37 Ga. App. 756 (142 SE 183) (1928) ("In certifying a question to the Supreme Court, the Court of Appeals can propound any question of law which in its opinion is presented by the record, and an answer to which might be necessary to a proper disposition of the case. In so doing, the court may limit its inquiry to questions, the answers to which would not be exhaustive of all questions presented by the record, and which might be necessary to the proper disposition of the case.").

[11] *Cf. C.I.T. Corp. v. Smith*, 68 Ga. App. 556, 556 (23 SE2d 503) (1942) (declining to certify question to Supreme Court when "the Supreme Court in so many recent cases has applied the above rule in cases involving similar questions"); *Adams v. Powell*, 67 Ga. App. 460, 460 (21 SE2d 111) (1942) ("The Court of Appeals is not authorized by the constitutional provision permitting that court to certify questions of law to the Supreme Court to request a review by the Supreme Court of a decision rendered by the Supreme Court." (punctuation omitted)).

[12] Report of the Georgia Appellate Jurisdiction Review Commission, 9 (Jan. 2016), https://gov.georgia.gov/sites/gov.georgia.gov/files/related_files/press_release/Final__Appellate%20Jurisdiction%20Review%20Commission%20Report.pdf; *see* GA. CONST. Art. VI, § VI, ¶ VI ("The decisions of the Supreme Court shall bind all other

8

granting petitions for certiorari,[13] and a desire to avoid confusing the bench and bar while a decision by the Supreme Court is pending,[14] we choose to take the road that has yet to be traveled and certify the question before us (and thus this case) to the Supreme Court of Georgia. If we were merely faced with following a precedent under review by our Supreme Court, that would be one thing. But proposing to overrule or substantially clarify one or more precedents currently under consideration by our Supreme Court, and thereby disrupting that court's certiorari process, goes a bridge too far.[15] As a result, we hereby certify the following question to our Supreme Court:

courts as precedents."); GA. CONST. Art VI, § V, ¶ III ("The Court of Appeals shall be a court of review and shall exercise appellate and certiorari jurisdiction in all cases not reserved to the Supreme Court or conferred on other courts by law. The decisions of the Court of Appeals insofar as not in conflict with those of the Supreme Court shall bind all courts except the Supreme Court as precedents.").

[13] *See* GA. CONST. Art. VI, § VI, ¶ V ("The Supreme Court may review by certiorari cases in the Court of Appeals which are of gravity or great public importance."); *see also* SUPREME COURT OF GEORGIA RULE 40 ("A review on certiorari is not a right. . . . A petition for the writ will be granted only in cases of great concern, gravity, or importance to the public.").

[14] *See State v. Hudson*, 293 Ga. 656, 661 (748 SE2d 910) ("In determining whether to reexamine this Court's precedent, we must consider factors such as the age of the precedent, the reliance interests involved, the workability of the prior decision, and most importantly, the soundness of its reasoning." (punctuation omitted)).

[15] In reaching this conclusion, we do not fault our dissenting colleagues for the contrary position they have taken. The question of whether or not to certify this

9

Does OCGA § 15-11-521 (b) require dismissal with prejudice when the State neither files a petition alleging delinquency within the applicable 30-day period nor seeks an extension of time in which to file such petition?

The Clerk of this Court is directed to prepare a certified copy of the foregoing question (as outlined in this opinion) and transmit this case, together with the record, to the Supreme Court of Georgia, as permitted by Georgia Constitution Art. VI, § V, ¶ IV and Georgia Constitution Art. VI, § VI, ¶ III (7).

*Question and case certified to the Supreme Court of Georgia. Miller, P. J., Boggs, Branch, Rickman, Mercier, and Peterson, JJ., concur. Barnes, P. J., Ellington, P. J., McFadden, and Ray, JJ., concur fully and specially. Doyle, C. J., Andrews, P. J., Phipps, P. J., and McMillian, J., dissent.*

---

question and case to our Supreme Court is a difficult one, and reasonable judges can (and do) disagree about how best to answer it.

A16A0395. IN THE INTEREST OF: J. F., a child.

RAY, Judge, concurring specially.

I join in the majority's decision to certify to our Supreme Court the question of whether OCGA § 15-11-521 (b) required the trial court to dismiss with prejudice the petition alleging delinquency when it was not filed within the 30-day period following the filing of the complaint . This course seems prudent given the Supreme Court's granting of certiorari to review our holdings in two somewhat procedurally similar cases, *In the Interest of M. D. H.*[1] and *In the Interest of D. V. H*,[2] which were decided by different panels of this Court at or about the same time. Most assuredly,

---

[1] 334 Ga. App. 394 (779 SE2d 433) (2015).

[2] 335 Ga. App. 299 (770 SE2d 122) (2015).

the Supreme Court's resolution of the issues in those cases will impact the ultimate resolution of the issues in the case herein.

In his dissent, Judge Andrews argues that not only should we decide this case on the merits and not forward the case to the Supreme Court for its consideration of the question that we certify, but also that we should reverse the decision of the trial court, thus requiring the trial court to dismiss the State's petition against J. F. with prejudice. If we were to decide this case on its merits and not allow the Supreme Court to first weigh in, I believe that the appropriate action would be to vacate and remand this case to the trial court to consider whether good cause exists to allow the State to file its petition alleging delinquency outside of the 30 day period found in OCGA § 15-11-521 (b).

The dissent agrees that the State should normally have an opportunity to demonstrate whether good cause exists for its late filing of a petition, and, indeed, the statute specifically allows as much. Yet, apparently, by arguing that we should reverse the trial court's order below, the dissent agrees with J. F. that the State should not get that opportunity herein. While arguably it may be correct that the State cannot manipulate the filing deadline by withdrawing its original complaint and re-filing the same so as to get an additional 30 day safe harbor within which to file its petition for

2

delinquency, I cannot agree with the suggestion that the opportunity to pursue its claim has been lost. As best I can tell, at no point has the trial court ruled whether and to what extent the State's late filing of the petition was justified. In my view, it is this decision which would determine whether this case can proceed, and the trial court should have the opportunity to consider the same.

Should this case have been decided on the merits, I do agree that we might have properly limited our holding in *In the Interest of M. D. H.* to the extent it implied that the State, despite its failing to comply with the 30 day deadline under OCGA § 15-11-521 (b), could proceed with its original petition or file a new one without the trial court's entering of an order with the required written findings of fact justifying an extension of the 30 day deadline. Yet, in *M. D. H.*, the trial court apparently mistakenly believed that it did not have the discretion to extend the 30 day period, despite the wording of the statute. At the same time, it at least implicitly found that good cause existed to justify the State's continued pursuit of its charges against the juvenile because it refused to dismiss the first petition with prejudice, noting the reason for the delay of its filing[3] and "the serious nature of the charge[s]" against the

---

[3] In *M. D. H.*, supra, it was undisputed that the prosecutor did not receive the complaint on his desk until the 31st day after it was filed and that the prosecutor filed the delinquency petition that same day.

3

juvenile, which included threatening to bring guns into his school and to kill his friend if he told anyone about his plans. [4]

The dissent argues that the facts of the present case are similar to those found in *In the Interest of D.V. H.*, wherein we affirmed the trial court's decision to dismiss with prejudice a petition for delinquency after the trial court found that just cause did not exist to allow an untimely petition to proceed. The facts of *D.V.H.* are distinguishable, however, from the facts in both the instant case and those found in *M. D. H.* The trial courts in *M. D. H.* and the instant case did not rule that the State was without a sufficient excuse to justify a late filing; indeed, arguably, the trial courts in each case implicitly found just the opposite.

In summary, I agree with the majority's decision to certify this case to the Supreme Court and to allow it, if it so chooses, to resolve the issues herein concurrent to its consideration of the other two cases outlined above which are currently before it. However, if we were to have decided this case on its merits, I believe the

---

[4] Under the facts of *M. D. H.*, supra, the proper result may have been for this Court to have vacated *M. D. H.*'s adjudication and remand the case to the trial court for a ruling on whether it intended to grant an extension under OCGA § 15-11-521 (b) and for a written order providing facts justifying such an extension. At the same time, however, the juvenile in *M. D. H.* did not enumerate as an error that the trial court did not make written findings justifying the late filing of the petition, only that the trial court had to dismiss the State's initial petition with prejudice.

appropriate resolution would have been to vacate the trial court's ruling and remand this case for a determination as to whether the State would be entitled to proceed with its petition although it was not timely filed. Should the trial court agree, then it would be required to issue a written order setting forth the reasons justifying that decision. If the trial court did not believe good cause so existed, then I agree that a dismissal with prejudice would be the proper result.

I am authorized to state that Presiding Judge Barnes and Presiding Judge Ellington join in this special concurrence.

A16A0395. IN THE INTEREST OF J. F., a child.

MCFADDEN, Judge, concurring fully and specially.

I concur fully in the majority opinion. I write separately only to note that, if the question were not to be certified, I would adhere to *In the Interest of D. V. H.*, 335 Ga. App. 299 (779 SE2d 122) (2015) and join Presiding Judge Andrews's opinion.

A16A0395. IN THE INTEREST OF J. F., a child.

ANDREWS, Presiding Judge, dissenting.

There may be some arguable practicality about certifying the question raised in this appeal to the Supreme Court because of the two similar cases currently pending there, but I do not believe this is an appropriate case to certify. "If an answer by the Supreme Court of a question certified to it by the Court of Appeals would constitute a decision of the main case, the question cannot, under the Constitution, be answered." (Citations omitted.) *Kelly v. Georgia Casualty & Surety Co.*, 216 Ga. 834, 835 (120 SE2d 329) (1961). As the answer to the question certified to the Supreme Court by the majority would clearly decide the appeal, I believe this Court should decide the appeal.

OCGA § 15-11-521 (b) provides

[i]f a child is not in detention prior to adjudication, a petition alleging delinquency shall be filed within 30 days of the filing of the complaint alleging violation of a criminal law or within 30 days of such child's release pursuant to a determination that detention is not warranted. Upon a showing of good cause and notice to all parties, the court may grant an extension of time for filing a petition alleging delinquency. The court shall issue a written order reciting the facts justifying any extension.

The procedural posture of this case is similar to two recent appeals decided by this Court: *In the Interest of M. D. H.,* 334 Ga. App. 394 (779 SE2d 433) (2015), and *In the Interest of D. V. H.*, 335 Ga. App. 299 (779 SE2d 122) (2015), both involving the construction of OCGA § 15-11-521 (b). In *M. D. H.*, where the juvenile court dismissed an untimely delinquency petition without prejudice, so that the state could file another petition and obtain an adjudication of delinquency, this Court affirmed the dismissal as one without prejudice.

In *D. V. H.*, the juvenile court denied the state's request for an extension and dismissed an untimely delinquency petition; after that dismissal, the state filed a new complaint restating the original charges and then filed a delinquency petition within 30 days of the new complaint; and the juvenile court dismissed that delinquency petition, finding that filing a new complaint did not reset the time limits for filing a

2

delinquency petition. This Court affirmed that dismissal, and although neither the juvenile court nor this Court indicated the dismissal was with prejudice, that is exactly what it was.

On motion for reconsideration in *D. V. H.*, this Court distinguished *M. D. H.* because that case had not involved an untimely petition following the juvenile court's rejection of the state's request for an extension. While noting "some tension between the analysis in this case and in *In the Interest of M. D. H.*, given the distinctions between the holdings of those two decisions we [did] not view *In the Interest of M. D. H.* to compel a juvenile court to accept a late petition when the court has determined that an extension for filing the petition was unjustified." The Supreme Court subsequently granted certiorari in both cases but has not yet decided the cases.

The instant case presents this Court with the opportunity to further confuse the construction and application of OCGA § 15-11-521 (b), a confusion this Court inadvertently created, or to end the confusion and construe the statute in a way so that both the state and the juvenile definitely know what their obligations and rights are. Counsel for J. F. suggests the following analysis and construction of OCGA § 15-11-521 (a) and (b):

3

1. OCGA § 15-11-521 (a), which governs when a child is detained prior to adjudication, requires the state to file a delinquency petition within 72 hours after the detention hearing. If no petition is filed within that 72-hour deadline, the child must be released and the complaint dismissed without prejudice. The dismissal is without prejudice, thus allowing the state to re-file the petition, because the legislature recognized the state might miss such a short deadline despite its effort to comply.

2. OCGA § 15-11-521 (b), which governs when a child is not detained, requires the state to file a delinquency petition within 30 days of the complaint or the child's release from detention. Thirty days should be sufficient time for the state to file a petition in most cases. But the legislature recognized there may be rare instances where the state has good cause for not filing within the 30-day deadline, and authorized the juvenile court to grant an extension of time in such a case.

If the state realizes it will be unable to file a delinquency petition within 30 days as required by OCGA §15-11-521 (b), it should show good cause for the untimeliness and seek an extension of time from the juvenile court. If the state has the unfettered ability to file or re-file a complaint and/or petition in disregard of the statutory extension provision, as was done in the instant case and in *M. D. H.*, it renders both the statutory extension provision and the 30-day deadline meaningless

4

and thwarts the legislative intent. For that reason, a dismissal of an untimely filing under OCGA § 15-11-521 (b) should be with prejudice in order to carry out the legislative intent manifested by the mandatory language of that statute.

The above suggested analysis is practical and eliminates all the confusion created by the tension between the analyses in *D. V. H.* and *M. D. H.,* and I would endorse it. "There must be scrupulous adherence to due process requirements in juvenile court proceedings." (Citation and punctuation omitted.) *In re B. A. P.*, 180 Ga. App. 433, 434 (349 SE2d 218) (1986). Consistent with that principle, I believe we should hold that a dismissal of an untimely filing under OCGA § 15-11-521 (b) must be with prejudice. To the extent *M. D. H.* is inconsistent with that proposition, I would overrule it.

I am authorized to state that Chief Judge Doyle, Presiding Judge Phipps, and Judge McMillian join in this dissent.